UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

DEBORAH K. SEIBEL,

        Plaintiff,

v.

MICHAEL ASTRUE, Commissioner of the Social Security Administration,

        Defendant.

Case No. C08-1244-JCC-BAT

**REPORT AND RECOMMENDATION**

Plaintiff Deborah K. Seibel seeks judicial review of the denial of her application for disability insurance benefits by the Commissioner of the Social Security Administration ("Commissioner"), after a hearing before an administrative law judge ("ALJ"). This matter has been referred to the undersigned Magistrate Judge pursuant to Local Rule MJR 4(A)(4) and as authorized by *Matthews v. Weber*, 423 U.S. 261 (1976). Dkt. 6. Plaintiff presents the following issues: (1) whether the ALJ adjudicated the time period previously reviewed by this Court and the time following that period, (2) whether the ALJ properly closed the record on remand, (3) whether the ALJ properly evaluated the opinions of three treating physicians, (4) whether substantial evidence supports the ALJ's finding that plaintiff could return to her previous work as an administrative assistant, (5) whether the ALJ erred by failing to follow the Social Security Ruling on evaluating a vocational expert's testimony, (6) whether the ALJ's decision is the final decision subject to review, and (7) whether substantial evidence supports the ALJ's adverse credibility

REPORT AND RECOMMENDATION – 1

findings. Dkt. 17 at 1. For the reasons set forth below, the undersigned recommends that the Commissioner's decision be REVERSED and REMANDED for an award of benefits.

## I. FACTUAL AND PROCEDURAL HISTORY

Plaintiff, who is currently 58 years old, has a high school diploma and two years of college education. Tr. 69, 80, 889. She has past work experience as an administrative assistant, a savings administrative specialist, and a bank teller. Tr. 75, 83. She was last employed as an administrative assistant in February 1999. Tr. 75.

In February 2001, plaintiff filed an application for a period of disability and disability insurance benefits, alleging disability as of September 1, 2000. Tr. 69-71. (Plaintiff later amended her alleged onset date to November 1, 2000. Tr. 821.) Her application was denied initially and on reconsideration. Tr. 36, 42. After a hearing, ALJ Edward P. Nichols issued a decision on October 23, 2002, finding plaintiff not disabled.[1] Tr. 25-33. On April 20, 2005, the Appeals Council denied review of that decision, making it the Commissioner's final decision under 42 U.S.C. § 405(g). Tr. 5-8.

Plaintiff sought judicial review of that decision and on May 5, 2006, this Court reversed the Commissioner's final decision and remanded for further administrative proceedings. Tr. 363-64, 407-22. The Appeals Council vacated ALJ Nichols's decision and remanded the case for further proceedings consistent with this Court's order. Tr. 365-68.

After a second hearing, ALJ M.J. Adams issued a decision on December 27, 2006, finding plaintiff not disabled. Tr. 372-81. The Appeals Council assumed jurisdiction of the case and remanded it for further proceedings. Tr. 444-49.

ALJ Verrell Dethloff held a third hearing, and on October 23, 2007, issued a decision

---

[1] Plaintiff states, and the Commissioner does not dispute, that the date stamped on the decision, October 23, 2001, is a typographical error. Dkt. 17 at 2.

REPORT AND RECOMMENDATION – 2

finding plaintiff not disabled. Tr. 384-92.  The Appeals Council again assumed jurisdiction of the case and remanded it for further proceedings.  Tr. 401-05.  ALJ Dethloff held a fourth hearing, and on April 25, 2008, issued a decision again finding plaintiff not disabled.  Tr. 347-57.  The Appeals Council declined to assume jurisdiction of the case, making ALJ Dethloff's April 2008 decision the Commissioner's final decision in this case.  Tr. 336-337A.  Plaintiff now seeks judicial review of ALJ Dethloff's April 2008 decision.

## II. THE ALJ'S DECISION

ALJ Dethloff applied the five-step sequential evaluation process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920.  At step one, the ALJ found that plaintiff did not engage in substantial gainful activity during the period between November 1, 2000, plaintiff's alleged onset date, and December 31, 2004, her date last insured.  Tr. 350 (Finding 2).

At step two, the ALJ found that through the date last insured, plaintiff had the following severe impairments:  degenerative disc disease of the spine, foot impairment status-post failed bilateral subtalar joint implants, fibromyalgia, and obesity. *Id.* (Finding 3).

At step three, the ALJ found that through the date last insured, plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Tr. 351 (Finding 4).  Specifically, the ALJ concluded that plaintiff's impairments did reach listing-level severity under section 1.00, musculoskeletal system. *Id.*

Before proceeding to step four, the ALJ found that through the date last insured, plaintiff had the residual functional capacity to lift and carry 20 pounds occasionally and 10 pounds frequently, stand and walk six hours in an eight-hour workday, and sit six hours in an eight-hour

REPORT AND RECOMMENDATION – 3

workday; she should avoid climbing ladders, scaffolds, and ropes; she could occasionally crawl; and she had no manipulative or environmental limitations. *Id.* (Finding 5). The ALJ also found that the evidence supported the residual functional capacity findings of ALJ Nichols and ALJ Adams. Tr. 355.

At step four, the ALJ found that through the date last insured, plaintiff's residual functional capacity did not preclude her from returning to her past relevant work as an administrative assistant. Tr. 355 (Finding 6). The ALJ found, in the alternative, that under either ALJ Nichols's or ALJ Adams's residual functional capacity findings, plaintiff was able to return to her past relevant work as an administrative assistant. *Id.* The ALJ accordingly found that plaintiff was not disabled from November 1, 2000, through December 31, 2004. Tr. 357 (Finding 7).

### III. STANDARD OF REVIEW

This Court may set aside the Commissioner's denial of disability benefits when the ALJ's findings are based on legal error or not supported by substantial evidence. 42 U.S.C. § 405(g); *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 201 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that the Court must uphold. *Id.*

## IV. DISCUSSION

**A. The ALJ evaluated the period from November 1, 2000, plaintiff's alleged onset date, through December 31, 2004, plaintiff's date last insured**

Plaintiff seeks to clarify that ALJ Dethloff's April 2008 decision adjudicated the period that this Court previously reviewed as well as the time following that period. Dkt. 17 at 4. Plaintiff asserts that on remand, the issue was not just whether plaintiff was disabled through the date of ALJ Nichols's decision, but whether she was disabled through her date last insured. *Id.* Plaintiff points to the fact that, when the Appeals Council remanded the case after ALJ Adams's decision, it stated: "because [ALJ Nichols's October 2002] decision was vacated, the period at issue extends to December 31, 2004, the date the claimant's insured status expired." Tr. 448; Dkt. 17 at 5.

After this Court reversed ALJ Nichols's decision, the Appeals Council vacated that decision. Tr. 367. In his April 2008 decision, ALJ Dethloff performed the five-step sequential evaluation with respect to the time period from plaintiff's alleged onset date through her date last insured, not simply the step-four analysis with respect the time period prior to ALJ Nichols's decision. ALJ Dethloff's April 2008 decision found that plaintiff was not disabled "from November 1, 2000, the alleged onset date, through December 31, 2004, the date last insured." Tr. 357. Plaintiff's assertion that ALJ Dethloff's decision evaluated this entire period is correct.

**B. The ALJ did not close the record to additional evidence after remand**

Plaintiff next contends that ALJ Dethloff "violated longstanding Agency policy regarding a claimant's right to submit additional evidence" after remand. Dkt. 17 at 6. Plaintiff asserts that ALJ Dethloff closed the record to the opinions of Robert Billow, D.O., and Stephen Miller, DPM, because they were not submitted to ALJ Adams prior to his December 2006 decision. *Id.*

In his April 2008 decision, as part of the step-two evaluation of plaintiff's severe

REPORT AND RECOMMENDATION – 5

impairments, ALJ Dethloff noted that after ALJ Adams's December 2006 decision, plaintiff submitted a declaration from Dr. Billow, one of her treating physicians in 2004. Tr. 350. ALJ Dethloff stated:

> Dr. Billow's declaration does not provide evidence of additional impairments not previously addressed in the prior two decisions. This document contains no new information, and no opinion which could not have been obtained prior to the decision of Judge Adams. As stated in the decision of October 2007, I accord it no weight.

Tr. 351. As part of the residual functional capacity evaluation, ALJ Dethloff noted that Dr. Billow opined in his declaration that plaintiff was not able to perform full-time work. Tr. 353. The ALJ discounted Dr. Billow's opinion for reasons similar to the reasons he rejected the opinion of Karina Hopen, M.D.,[2] and because the medical expert testified that the objective medical evidence did not support Dr. Billow's opinion. *Id.*

Also as part of the residual functional capacity evaluation, ALJ Dethloff noted that plaintiff submitted a December 2007 declaration from Dr. Miller to the Appeals Council as part of the appeal of ALJ Dethloff's October 2007 decision. Tr. 353. This declaration was the predicate for the Appeals Council's remand. *Id.* The ALJ discussed Dr. Miller's opinions as to plaintiff's ability to walk and stand throughout an eight-hour basis, and noted that Dr. Miller had not seen plaintiff between May 2001 and October 2007, nearly three years after plaintiff's insured status expired. *Id.* The ALJ also noted that Dr. Miller based his opinions in part on the gastric slide surgeries performed by Eric Hansen, M.D., in 2001. *Id.* The ALJ then stated:

> Given the evidence that the [2001] gastric slide surgery was a success, the fact that Dr. Miller did not see the claimant between May 2001 and October 2007, and the lack of objective support for his opinion, I give little weight to his opinion of December 2007.

---

[2] These reasons included the fact that it was unclear whether Dr. Hopen treated plaintiff before the date last insured of December 2004 and that the objective evidence from before December 2004 did not substantiate Dr. Hopen's opinions. Tr. 352.

REPORT AND RECOMMENDATION – 6

Tr. 354. The ALJ further stated that the fact that opinion evidence is obtained after an adverse decision may be a determining factor in weighing that opinion because such reports are less credible, and that "it would be poor policy to accord significant weight to such evidence since it will encourage abuse of the administrative process by representatives." *Id.*

Plaintiff repeatedly characterizes the ALJ's action as refusing to let plaintiff submit evidence or closing the record to new evidence after remand. Dkt. 17 at 6-8. This characterization is incorrect. The ALJ did not close the record or refuse to let plaintiff submit additional evidence. Rather, the ALJ accepted the evidence as submitted and evaluated the weight to give to it. The fact that the doctors made the declarations after ALJ Adams's adverse decision was a factor in that evaluation. This procedure was not erroneous.

Plaintiff faults the ALJ for finding that it would be poor policy to give significant weight to Dr. Miller's opinion, arguing that Social Security Administration policy permits a claimant to freely submit new evidence after remand. Dkt. 17 at 6-7. Even if it would violate Administration policy or otherwise be in error for an ALJ to refuse to permit a claimant to submit evidence after remand, that is not what occurred here. As stated above, the ALJ did not close the record to this evidence. In addition, even if the ALJ erred in considering the policy implications of submitting new evidence after remand, the ALJ gave additional reasons for giving little or no weight to the opinions. Any error in considering policy implications was harmless. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004). The Court evaluates the correctness of the other reasons the ALJ gave little or no weight to this evidence in the following section.

Plaintiff also appears to argue that the ALJ erred by citing cases relevant to a district court's ability to consider new evidence after an adverse administrative decision. Dkt. 17 at 8. However, the ALJ cited to a case involving an ALJ's evaluation of opinion evidence solicited

REPORT AND RECOMMENDATION – 7

following an adverse decision. *See* Tr. 354 (citing *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1463-64 (9th Cir. 1995) (upholding ALJ's rejection of treating physician's opinion where, among other factors, the ALJ found the opinion was "all the less persuasive" because it was solicited after an earlier denial of benefits)). The ALJ did not err in relying on this case to support his evaluation of the opinions.

**C.     The ALJ erred in evaluating the treating physicians' opinions**

Plaintiff next argues that ALJ Dethloff erred in evaluating the opinions of her treating physicians regarding her residual functional capacity. Dkt. 17 at 8. She asserts that the ALJ erred in rejecting the opinions of Dr. Hopen, Dr. Billow, and Dr. Miller that plaintiff is not capable of working full-time, in favor of the opinion of non-examining physician Michael Gurvey, M.D. Dkt. 17 at 10-11.

In general, more weight should be given to the opinion of a treating physician than to a non-treating physician, and more weight to the opinion of an examining physician than to a non-examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Where a treating doctor's opinion is not contradicted by another doctor, the ALJ may reject it only for "clear and convincing reasons." *Id.* (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)). Where a treating doctor's opinion is contradicted, the ALJ may not reject it without providing "'specific and legitimate reasons' supported by substantial evidence in the record for doing so." *Id.* at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)). An ALJ does this by setting out a detailed and thorough summary of the facts and conflicting evidence, stating his interpretation of the facts and evidence, and making findings. *Magallanes*, 881 F.2d at 751. The ALJ must do more than offer his conclusions; he must also explain why his interpretation, rather than the treating doctor's interpretation, is correct. *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir.

REPORT AND RECOMMENDATION – 8

2007) (citing *Embrey v. Bowen*, 849 f.2d 418, 421-22 (9th Cir. 1988).

Plaintiff argues that her treating physicians' opinions were due more weight because she had an intimate treating relationship with them, the physicians set forth the objective bases for their opinions in "exquisite detail," and the physicians were board-certified specialists giving opinions in their area of expertise. Dkt. 17 at 10-11. Plaintiff further argues that Dr. Gurvey's testimony is not substantial evidence to support the ALJ's findings because Dr. Gurvey stated he had no reason to question plaintiff's credibility and Dr. Gurvey erred in his consideration of medication side effects and the objective medical evidence. Dkt. 17 at 11-12.

**1. Dr. Hopen**

Dr. Hopen opined, in October 2006, that plaintiff was unable to work full-time because of chronic back and neck pain as well as fibromyalgia. Tr. 352, 778. The ALJ rejected Dr. Hopen's opinion because it was unclear when Dr. Hopen first treated plaintiff and the ALJ found no treatment records from Dr. Hopen before December 2004, plaintiff's date last insured. Tr. 352. However, medical evaluations made after the expiration of a claimant's insured status are relevant to an evaluation of the pre-expiration condition. *Sampson v. Chater*, 103 F.3d 918, 922 (9th Cir. 1996) (quoting *Smith v. Bowen*, 849 F.2d 1222, 1225-26 (9th Cir. 1988)). Medical reports should not be disregarded solely because they are retrospective. *Smith*, 849 F.2d at 1225 (citing *Bilby v. Schweiker*, 762 F.2d 716, 719 (9th Cir. 1985)). Dr. Hopen stated that her opinion covered the time period from September 2000 to the date of her declaration, October 2006, and that she had the opportunity to review plaintiff's medical records prior to treating her. Tr. 774. The ALJ gave no reason for rejecting Dr. Hopen's retrospective evaluation.

The ALJ also found that the objective evidence from before December 2004 did not substantiate Dr. Hopen's opinion. Tr. 352. The ALJ listed the findings from a November 2003

REPORT AND RECOMMENDATION – 9

MRI, a December 2003 x-ray, a January 2004 x-ray, a February 2004 MRI, and a March 2004 bone scan. *Id.* But the ALJ did not explain how this evidence did not support Dr. Hopen's opinion. A conclusory statement that the objective evidence does not support a treating physician's opinion is not a specific and legitimate reason to reject the opinion. *See Orn*, 495 F.3d at 632 (citing *Embrey*, 849 F.2d at 421-22). The ALJ did not provide specific and legitimate reasons supported by substantial evidence for rejecting Dr. Hopen's opinion that plaintiff was not capable of performing full-time work.

### 2. Dr. Billow

Dr. Billow opined, in May 2007, that plaintiff lacked the ability to perform full-time work because of her obesity, foot problems, and lumbar and cervical spine problems. Tr. 353, 798-99. The ALJ rejected Dr. Billow's opinion for reasons similar to those he listed for rejecting Dr. Hopen's opinion. Tr. 353. This reasoning suffers from the same defects as the ALJ's findings regarding Dr. Hopen's opinion. To the extent Dr. Billow's opinion was retrospective,[3] that in itself was not a valid reason to reject it. And, as with Dr. Hopen's opinion, the ALJ did not explain how the objective evidence did not support Dr. Billow's opinion.

The ALJ also rejected Dr. Billow's opinion because the medical expert, Dr. Gurvey, testified that the objective medical evidence did not support it. *Id.* But a review of Dr. Gurvey's testimony does not support this finding. When the ALJ asked Dr. Gurvey whether there was an "objective predicate" for Dr. Billow's opinion, Dr. Gurvey responded, "I don't know." Tr. 863. After a discussion of Dr. Billow's specialization, Dr. Gurvey stated, "Well, I mean, that's his opinion, Your Honor. I don't, I don't agree with him, based on my review of the medical records." Tr. 864. Dr. Gurvey testified that he interpreted the objective medical evidence

---

[3] Dr. Billow stated that he began treating plaintiff in early 2004, almost a year before her insured status expired. *See* Tr. 795.

REPORT AND RECOMMENDATION – 10

differently than Dr. Billow, not that the objective medical evidence did not support Dr. Billow's opinion. When a non-treating physician interprets the same evidence as a treating physician, and differs only in his conclusions, the conclusions of the non-treating physician are not substantial evidence. *See Orn*, 495 F.3d at 632. A non-examining medical advisor's testimony does not by itself constitute substantial evidence to support a rejection of a treating doctor's opinion. *See Lester*, 81 F.3d at 833. The ALJ did not provide specific and legitimate reasons supported by substantial evidence for rejecting Dr. Billow's opinion that plaintiff was not capable of performing full-time work.

### 3. Dr. Miller

Dr. Miller opined, in December 2007, that plaintiff could not "on a sustained basis" perform a job that required her to stand or walk for two hours out of an eight-hour day because she may have some days where she could be on her feet that long, but it would be too painful if she had to do it five days per week for 50 weeks a year. Tr. 353, 816-17. He had the same opinion with regard to a job that required sitting eight hours a day with a need to walk for 5 to 10 minutes out of every 30 to 45 minutes because she may have some days where she could walk that much, but it would be too painful to have to walk 10 minutes out of every 30. Tr. 353, 817.

The ALJ gave little weight to Dr. Miller's opinion. Tr. 354. The ALJ found that Dr. Miller based his opinion in part on a surgery performed by Eric Hansen, M.D., in 2001, which Dr. Hansen considered to be a success. *Id.* Dr. Hansen performed gastroc slide surgery on plaintiff, in which he lengthened the Achilles tendon in plaintiff's left and right legs in an attempt to lessen the pain in plaintiff's feet with weight-bearing. Tr. 259, 263, 815. Prior to conducting the operation on her right leg, Dr. Hansen noted that plaintiff experienced "significant relief" from the operation on her left leg. Tr. 259. Dr Hansen's follow-up treatment notes indicated that plaintiff recovered

differently than Dr. Billow, not that the objective medical evidence did not support Dr. Billow's opinion. When a non-treating physician interprets the same evidence as a treating physician, and differs only in his conclusions, the conclusions of the non-treating physician are not substantial evidence. *See Orn*, 495 F.3d at 632. A non-examining medical advisor's testimony does not by itself constitute substantial evidence to support a rejection of a treating doctor's opinion. *See Lester*, 81 F.3d at 833. The ALJ did not provide specific and legitimate reasons supported by substantial evidence for rejecting Dr. Billow's opinion that plaintiff was not capable of performing full-time work.

### 3. Dr. Miller

Dr. Miller opined, in December 2007, that plaintiff could not "on a sustained basis" perform a job that required her to stand or walk for two hours out of an eight-hour day because she may have some days where she could be on her feet that long, but it would be too painful if she had to do it five days per week for 50 weeks a year. Tr. 353, 816-17. He had the same opinion with regard to a job that required sitting eight hours a day with a need to walk for 5 to 10 minutes out of every 30 to 45 minutes because she may have some days where she could walk that much, but it would be too painful to have to walk 10 minutes out of every 30. Tr. 353, 817.

The ALJ gave little weight to Dr. Miller's opinion. Tr. 354. The ALJ found that Dr. Miller based his opinion in part on a surgery performed by Eric Hansen, M.D., in 2001, which Dr. Hansen considered to be a success. *Id.* Dr. Hansen performed gastroc slide surgery on plaintiff, in which he lengthened the Achilles tendon in plaintiff's left and right legs in an attempt to lessen the pain in plaintiff's feet with weight-bearing. Tr. 259, 263, 815. Prior to conducting the operation on her right leg, Dr. Hansen noted that plaintiff experienced "significant relief" from the operation on her left leg. Tr. 259. Dr Hansen's follow-up treatment notes indicated that plaintiff recovered

differently than Dr. Billow, not that the objective medical evidence did not support Dr. Billow's opinion. When a non-treating physician interprets the same evidence as a treating physician, and differs only in his conclusions, the conclusions of the non-treating physician are not substantial evidence. *See Orn*, 495 F.3d at 632. A non-examining medical advisor's testimony does not by itself constitute substantial evidence to support a rejection of a treating doctor's opinion. *See Lester*, 81 F.3d at 833. The ALJ did not provide specific and legitimate reasons supported by substantial evidence for rejecting Dr. Billow's opinion that plaintiff was not capable of performing full-time work.

### 3. Dr. Miller

Dr. Miller opined, in December 2007, that plaintiff could not "on a sustained basis" perform a job that required her to stand or walk for two hours out of an eight-hour day because she may have some days where she could be on her feet that long, but it would be too painful if she had to do it five days per week for 50 weeks a year. Tr. 353, 816-17. He had the same opinion with regard to a job that required sitting eight hours a day with a need to walk for 5 to 10 minutes out of every 30 to 45 minutes because she may have some days where she could walk that much, but it would be too painful to have to walk 10 minutes out of every 30. Tr. 353, 817.

The ALJ gave little weight to Dr. Miller's opinion. Tr. 354. The ALJ found that Dr. Miller based his opinion in part on a surgery performed by Eric Hansen, M.D., in 2001, which Dr. Hansen considered to be a success. *Id.* Dr. Hansen performed gastroc slide surgery on plaintiff, in which he lengthened the Achilles tendon in plaintiff's left and right legs in an attempt to lessen the pain in plaintiff's feet with weight-bearing. Tr. 259, 263, 815. Prior to conducting the operation on her right leg, Dr. Hansen noted that plaintiff experienced "significant relief" from the operation on her left leg. Tr. 259. Dr Hansen's follow-up treatment notes indicated that plaintiff recovered

well from the surgery. Tr. 256-58. In 2007, Dr. Miller found that plaintiff had no tenderness in the balls of her feet, "which was a good sign because that was the purpose of lengthening her Achilles tendon in the gastroc slide surgeries." Tr. 815. However, Dr. Miller further opined that, given plaintiff's fibromyalgia, the scar tissue and nerve damage caused by the surgery "is the most likely and best explanation for her pain." Tr. 816. Dr. Miller's opinion addressed the long-term effects of the surgery combined with the effects of plaintiff's fibromyalgia; his opinion did not contradict Dr. Hansen's assessment of the surgery. This was not a legitimate reason for giving little weight to Dr. Miller's opinion.

The ALJ also gave little weight to Dr. Miller's opinion because Dr. Miller did not see plaintiff between 2001 and 2007. Tr. 354. As with Dr. Hopen's and Dr. Billow's opinions, the ALJ gave no reason for rejecting Dr. Miller's retrospective opinions. In addition, Dr. Miller began treating plaintiff as early as 1994, and saw plaintiff regularly through May 2001. Tr. 124-57. The length of the treatment relationship, combined with the 2007 examination, gave Dr. Miller a longitudinal picture of plaintiff's impairment that was reason to give it more weight, not less. *See* 20 C.F.R. § 404.1527(d)(2)(i).

The ALJ also found that there was a lack of objective evidence to support Dr. Miller's opinion. Tr. 354. However, Dr. Miller stated that he disagreed with Dr. Gurvey's testimony that there were no findings on physical examination of tenderness or inflammation in plaintiff's tissue or feet. Tr. 815. Dr. Miller described his findings of tenderness and swelling, explained how each surgery on plaintiff's feet and legs caused additional scar tissue to develop, and explained how that scar tissue could cause plaintiff's pain. Tr. 815-16. The ALJ did not explain how this objective evidence did not support Dr. Miller's opinion. And Dr. Gurvey's interpretation of the evidence does not by itself constitute substantial evidence to support rejecting Dr. Miller's opinion. *See*

*Lester*, 81 F.3d at 833.

The ALJ also considered the fact that plaintiff obtained Dr. Miller's opinion after the adverse decision in October 2007. Tr. 354. This may be a valid factor in evaluating a medical opinion. *See Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1463 (9th Cir. 1995). But the purpose for which a claimant obtains a medical report is not in itself a legitimate basis for rejecting it. *Lester*, 81 F.3d at 832. And there is no evidence of any improprieties in Dr. Miller's declaration. *See id.* The timing of Dr. Miller's declaration, standing alone, is not a specific and legitimate reason supported by substantial evidence for giving little weight to Dr. Miller's opinion. The ALJ erred in rejecting Dr. Miller's opinion that plaintiff is not capable of working full time.

**D.      This matter should be remanded for an award of benefits**

Plaintiff requests that this case be remanded for an award of benefits. Dkt. 17 at 9, 24. Because the ALJ has committed reversible error, the Court has discretion to remand for further proceedings or to award benefits. *See Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990). The Court may order a remand for further administrative proceedings if enhancement of the record would be useful. *See Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Or the Court may remand for an award of benefits where "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citing *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996)). This occurs when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting the claimant's evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled if he considered the claimant's evidence.

*Id.* at 1076-77.

REPORT AND RECOMMENDATION – 13

Where the Commissioner fails to provide adequate reasons for rejecting a treating physician's opinion, the Court may credit that opinion as a matter of law and remand for an award of benefits. *Lester*, 81 F.3d at 834. In this case, the ALJ rejected the opinions of three of plaintiff's treating physicians for legally insufficient reasons. All three opined that through her date last insured, plaintiff could not perform full-time work for 8 hours a day, 40 hours a week, 50 weeks a year. Tr. 352-54, 778-79, 798-99, 815-16. Dr. Hopen opined that plaintiff could not perform either light or sedentary work on a sustained basis. Tr. 778-79. Dr. Billow opined that if plaintiff was required to sit for sustained periods during the day, she would need the opportunity to walk around to decompress her discs for 5 to 10 minutes every 30 to 45 minutes, as long as that would not cause problems with her feet, which Dr. Billow did not treat. Tr. 798-99. Dr. Miller, plaintiff's podiatrist, opined that having to walk as frequently as Dr. Billow suggested would be too painful for plaintiff's feet. Tr. 817. This testimony, combined with the evidence of record, establishes that plaintiff is unable to perform her past relevant work or engage in other substantial gainful activity available in significant numbers in the national economy.

Plaintiff filed her initial application for benefits in February 2001, over eight years ago. After four administrative hearings, one remand from this Court, and two Appeals Council remands, "the record has been fully developed and further administrative proceedings would serve no useful purpose." *McCartey*, 298 F.3d at 1076. Furthermore, the evidence in the record would require the ALJ to find the plaintiff disabled during the relevant period. Under these circumstances, and in light of the length of time between the plaintiff's application and the present, this matter should be remanded with a direction for the award of benefits.

///

///

## V. CONCLUSION

For the foregoing reasons, the Court recommends that this case be REVERSED and REMANDED for an award of benefits. A proposed order accompanies this Report and Recommendation.

DATED this 26th day of May, 2009.

_____
BRIAN A. TSUCHIDA
United States Magistrate Judge